IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN SCHNECKER,

    Plaintiff,

v.

CITY OF BETHLEHEM,

    Defendants.

Case No. 5:18-CV-03765-EGS

JURY TRIAL DEMANDED

## FIRST AMENDED COMPLAINT

NOW COMES, Plaintiff, John Schnecker, by and through his attorney, Colin Patrick Saltry, Esq. of Kraemer, Manes & Associates LLC, and files this First Amended Complaint alleging as follows:

### I. Nature of the Action

Plaintiff brings this action under the Family and Medical Leave Act ("FMLA"), 29 § U.S.C. 2601 *et. seq.*, the Americans with Disabilities Act ("ADA") 42 U.S.C §12101, & the Age Discrimination in Employment Act ("ADEA") 29 U.S.C. § 62.

### II. Jurisdiction and Venue

1. This action arises under the statutes cited in the preceding paragraph. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331.

2. Plaintiff is a resident and citizen of Pennsylvania, a substantial part of the events or omissions giving rise to the claims occurred in Eastern Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania and the venue is proper pursuant to 28 U.S.C. § 1391(b)(1).

3. Plaintiff filed a timely charge with the Equal Employment Opportunity Commission ("EEOC") regarding his allegations under the ADA & ADEA on October 24, 2018 under charge number 530-2017-03541. *See Exhibit 1.*

4. Plaintiff was mailed Notice of Right to Sue from the EEOC on July 9, 2018. The Complaint has been filed within ninety (90) days of the Plaintiff's receipt, thus making this action timely. *See Exhibit 2.*

### III. Parties

5. Plaintiff, John Schnecker, ("Plaintiff"), is an adult individual who currently resides at 1311 North Blvd., Bethlehem, PA 18017.

6. Defendant, City of Bethlehem ("Defendant") is a corporation with a business address of 10 East Church Street, Bethlehem, PA 18018. The location where Plaintiff worked was 10 East Church Street, Bethlehem, PA 18018.

7. At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with Defendant.

### IV. Facts

8. Plaintiff is a fifty-six (56) year old man and is diagnosed with severe stress disorder, anxiety and depression.

9. At all material times, Plaintiff was a "qualified individual" with a "disability" as those terms are defined by the Americans with Disabilities Act ("ADA").

10. Plaintiff was hired by Defendant in June 1982, as a Utility Maintenance Supervisor.

11. On May 25th, 2017, Plaintiff was presented with a 90-day Performance Improvement Plan.

12. Defendant's other similarly-situated supervisors were not presented with a performance improvement plan.

13. On or about June 6, 2017, Plaintiff began experiencing debilitating symptoms of anxiety and depression and informed Defendant of his need for leave.

14. Plaintiff was initially cleared to return to work on June 21st, but during the course of his treatment, his physicians pushed that date back and did not clear him to return to work until August 7, 2017.

15. Defendant was aware that Plaintiff's leave was medically necessary and related to, *inter alia*, several surgeries he had on his hand.

16. Specifically, Plaintiff took time off for work for surgery on his hand on July 18, 2017 and again on August 1, 2017.

17. Plaintiff duly provided Defendant with advance notice in every instance that he took time off from work.

18. Two (2) other supervisors, who were similarly-situated to Plaintiff in all material respects except for his scheduled medical leave, were not placed on Performance Improvement Plans.

19. The Performance Improvement Plan Plaintiff was placed on required improvement in six (6) highly complex areas, as well as significant amounts of specialized training and education.

20. Despite the complexities that the Performance Improvement Plan imposed on Plaintiff, it was silent as to how the required training and education was to be obtained or paid for.

21. On June 20, 2017, Plaintiff's previous counsel, Donald P. Russo, Esq., wrote to Defendant in order to explain, among other things:

> a. That Defendant's imposition of a 90-day Performance Improvement Plan, which Defendant knew could not reasonably be completed by the deadline imposed because, *inter alia,* it conflicted with his scheduled medical leave was inherently unfair; and/or
>
> b. That Defendant was subjecting Plaintiff to disparate treatment, at least as compared to two other supervisors, each of whom had levels of responsibility equivalent to his own but did not have performance improvement plans imposed upon them

22. On July 13, 2017, Defendant's Director of Human Resources contacted Plaintiff via letter informing him that pursuant to Defendant's Personnel Manual – Sick Leave policy, he would need to present an additional note or certificate from his physician for each additional full or partial month stating the nature of his illness; that the employee is unfit to work; and the probable return to work date.

23. Plaintiff complied with Defendant's policy and duly provided notes from his physician – Dr. James Manley, D.O. – via fax to Defendant on July 12, 2017 indicating that Plaintiff was under his care, that Plaintiff would undergo surgery on July 18, 2017 and August 1, 2017, and that he should be excused from work until August 7, 2017 due to having surgery.

24. Defendant contacted Plaintiff on July 25, 2017 informing him that it believed his continued compliance with its sick-leave policy constituted a "deliberate refusal to carry out any proper order from any supervisor; insubordination" in so far as Plaintiff could not complete the requirements of the PIP while out on leave.

25. Further, Defendant characterized Plaintiff's continued compliance with its sick-leave policy as "direct elements of insubordination" and stated that it found his continued absence under orders of his physician as excessive absenteeism. Defendant stated in this letter that it considered Plaintiff unable to perform the essential function of his job as a supervisor – despite Plaintiff's anticipated return to work date of August 7, 2017.

26. Defendant informed Plaintiff that it had scheduled a Loudermill hearing for July 31, 2017 for Plaintiff to explain his conduct and correct any information upon which Defendant might rely on in considering Plaintiff's future employment.

27. Plaintiff's then-attorney, Mr. Russo contacted Defendant on July 27, 2017, stating that Plaintiff was currently on a FMLA leave, and requested that Defendant reschedule its planned meeting for July 31, 2017 to a date following Plaintiff's return to work on August 7, 2017.

28. Defendant contacted Mr. Russo on July 28, 2017 and informed him that Defendant intended to proceed with the Loudermill hearing on July 31.

29. Further, Defendant indicated that Plaintiff was ineligible for FMLA leave under its FMLA leave policy, as that policy requires an employee's consumption of all paid leave time prior to entitlement to FMLA leave. Defendant stated that because Plaintiff had not exhausted his "vast reserve of accumulated paid time off" he was not entitled to leave.

30. Plaintiff did not attend the July 31, 2017 Loudermill hearing.

31. Plaintiff was terminated on July 31, 2017, while still in compliance with Defendant's sick leave policy.

32. Defendant never afforded Plaintiff a reasonable opportunity to complete its 90-day Performance Improvement Plan.

33. Extending the Performance Improvement Plan deadline would have been a "reasonable accommodation" within the meaning of the ADA.

34. Plaintiff was 55 years old when Defendant terminated his employment.

### V. Causes of Action

### COUNT I
### Interference in Violation of the FMLA

35. All other paragraphs of this pleading are incorporated herein as if set forth at length.

36. The FMLA provides job protection and equality to employee who are in an equivalent leave status. It is not used to force an employee into a particular status or to deny them the rights and privileges of their accrued benefits.

37. Defendant employed more than 50 people within a 75-mile radius of the worksite where Plaintiff worked.

38. Defendant is a covered employer within the meaning of the FMLA.

39. Plaintiff worked for at least twelve (12) months for Defendant.

40. Plaintiff worked more than 1,250 hours for Defendant in the previous year prior to Plaintiff's leave.

41. Plaintiff is an eligible employee within the meaning of the FMLA.

42. Plaintiff was entitled to FMLA concurrent to his use of Defendant's paid sick leave.

43. Plaintiff believed he was protected by the FMLA while out on sick leave and in compliance with Defendant's sick leave policy.

44. Plaintiff notified Defendant of his intent to invoke his FMLA rights through his then-attorney's letter to Defendant on July 27, 2017.

45. Defendant interfered with Plaintiff's FMLA rights when it refused to consider him eligible for FMLA leave based on his "vast reserve of accumulated paid time off."

## COUNT III
## Retaliation in Violation of the FMLA

46. All other paragraphs of this pleading are incorporated herein as if set forth at length.

47. The FMLA provides job protection and equality to employee who are in an equivalent leave status. It is not used to force an employee into a particular status or to deny them the rights and privileges of their accrued benefits.

48. Defendant employed more than 50 people within a 75-mile radius of the worksite where Plaintiff worked.

49. Defendant is a covered employer within the meaning of the FMLA.

50. Plaintiff worked for at least twelve (12) months for Defendant.

51. Plaintiff worked more than 1,250 hours for Defendant in the previous year prior to Plaintiff's leave.

52. Plaintiff is an eligible employee within the meaning of the FMLA.

53. Plaintiff was entitled to FMLA concurrent to his use of Defendant's paid sick leave.

54. Plaintiff believed he was protected by the FMLA while out on sick leave and in compliance with Defendant's sick leave policy.

55. Plaintiff notified Defendant of his intent to invoke his FMLA rights through his then-attorney's letter to Defendant on July 27, 2017.

56. Defendant terminated Plaintiff, in whole or in part, in retaliation for him exercising his lawful right to FMLA-protected leave, in violation of the FMLA.

57. As a direct result of Defendant's unlawful acts and omissions, Plaintiff suffered damages.

WHEREFORE, Plaintiff respectfully request that this Court enter judgment in his favor, and against the Defendants, and award all damages available at law and in equity, including: lost wages, front pay, compensatory damages, punitive damages, court costs, attorney fees, pre-judgment and continuing interest, and any other relief that the Court deems necessary and proper.

## COUNT III
## Violation of the ADA
### (Discrimination, Failure to Accommodate, & Retaliation)

58. All other paragraphs of this pleading are incorporated herein as if set forth at length.

59. Defendant is an employer with the meaning of the ADA.

60. Plaintiff is a qualified individual with a disability within the meaning of the ADA.

61. As described in detail above, Plaintiff requested reasonable accommodations.

62. Defendant did not engage in any meaningful interactive process with respect to Plaintiff's disability, and in doing so, failed to offer any reasonable accommodations.

63. Defendant terminated Plaintiff's employment within a close temporal proximity of Plaintiff's request for reasonable accommodations.

64. The foregoing facts state a claim for unlawful retaliation under the ADA because, *inter alia*: Plaintiff engaged in protected activity by asking Defendant for reasonable time off

from work so that he could receive medically necessary treatment and by having his former counsel write to Defendant to explain that its 90 day Performance Improvement Plan was unreasonable under the circumstances; Plaintiff suffered numerous adverse employment actions because of his protected activity, including without limitation, Defendant's failure to engage in a good faith interactive process, and Defendant's termination of his employment. Moreover, temporal proximity and the sequence of events show that his protected activity caused Defendant's adverse employment actions toward Plaintiff.

65. Defendant's actions constitute violations of the ADA.

66. As a direct result of Defendant's unlawful acts and omissions, Plaintiff suffered damages.

WHEREFORE, Plaintiff respectfully request that this Court enter judgment in his favor, and against the Defendants, and award all damages available at law and in equity, including: lost wages, front pay, compensatory damages, punitive damages, court costs, attorney fees, pre-judgment and continuing interest, and any other relief that the Court deems necessary and proper.

## COUNT IV
### Discrimination in Violation of the ADEA

67. The averments contained in the preceding paragraphs are incorporated herein as though fully set forth at length.

68. Defendant paid the Plaintiff to perform services, within the regular course of its business, in accordance with a regular payroll schedule. Defendant is therefore an employer, and the Plaintiff an employee, within the meaning of the ADEA.

69. Plaintiff is over forty (40) years of age at all times relevant to this Complaint, and is of a protected class pursuant to the provisions of the ADEA.

70. Plaintiff was fully qualified to do his job.

71. Defendant engaged in unlawful discrimination in violation of the ADEA by discriminating against Plaintiff due to his age.

72. Upon information and belief, Defendant replaced Plaintiff with a much younger employee only a few weeks after he was terminated; namely, Tobias Weaver who was approximately 30 years old at the time Plaintiff's job responsibilities were assigned to Mr. Weaver.

73. The foregoing facts state a claim for age discrimination under the ADEA because, *inter alia*, Plaintiff was approximately 55 years old at the time he suffered adverse employment actions (including Defendant's ultimate termination of his employment), Plaintiff was qualified for his position (*e.g.*, Plaintiff dutifully served Defendantt as its employee for over 30 years), and within several weeks of his termination, Plaintiff was replaced by someone at least 20 years younger.

74. Plaintiff believes, and therefore avers, that he was demoted on the basis of his age in violation of the ADEA.

75. Plaintiff suffered damages that are the direct and proximate cause of Defendant's unlawful actions.

WHEREFORE, Plaintiff respectfully request that this Court enter judgment in his favor, and against the Defendants, and award all damages available at law and in equity, including: lost wages, front pay, compensatory damages, punitive damages, court costs, attorney fees, pre-judgment and continuing interest, and any other relief that the Court deems necessary and proper.

Respectfully Submitted,

*[signature]*

Colin P. Saltry, Esquire
PA ID: 323464
**KRAEMER, MANES & ASSOCIATES LLC**
1628 JFK Blvd., Suite 1650
Philadelphia, PA 19103
215.475.3544 (p)
215.853.3665 (f)
cs@lawkm.com
*Attorney for Plaintiff*